**Usha HARPALANI, Jaideep Harpalani, a minor, by his mother and next friend Usha Harpalani; and Haresh Harpalani, a minor, by his mother and next friend Usha Harpalani, Plaintiffs,**

v.

**AIR INDIA, INC., Defendant.**

No. 85 C 244.

United States District Court, N.D. Illinois, E.D.

Sept. 30, 1985.

John Scott Hoff, Jeffrey O. Rubin, Lapin, Hoff, Spangler & Greenberg, Chicago, Ill., for plaintiffs.

David L. Carden, Lee Ann Russo, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

KOCORAS, District Judge:

The plaintiffs, Usha Harpalani and her two children, Jaideep and Haresh Harpalani, are United States citizens who reside in Naperville, Illinois. In March, 1983, they booked round trip air transportation on Air India from New York to Bombay, India through Air India agents in Chicago. After arriving in India in August, 1983, Usha Harpalani allegedly contacted Air India agents in Poona, India and confirmed reservations for their return flight at 1:05 a.m.

on August 24, 1983. When the Harpalanis reported to the Air India counter at the Bombay airport on the evening of August 23 for preflight check-in, Air India employees advised them that the flight was overbooked and that they would not be allowed to board. The complaint further alleges that Air India refused endorse the Harpalanis' tickets to other airlines which had flights from Bombay to New York that evening but instead advised the Harpalanis to "try again tomorrow." Complaint ¶ 21. Air India allegedly refused to board the Harpalanis or endorse the tickets for the following six days until on August 31, 1983, the Harpalanis were permitted to board an Air India flight from Bombay to New York.

The Harpalanis seek to recover damages for the delay, including inconvenience and monetary loss such as the cost of meals and lodging in Bombay, telephone expenses and Usha Harpalani's lost wages. The complaint alleges violations of the Warsaw Convention, specified federal regulations, the Illinois Consumer Fraud and Deceptive Business Practices Act and breach of contract.

Air India has moved to dismiss on several grounds. Air India asserts that Counts I and II fail to state a claim under Article 19 of the Warsaw Convention and the federal regulations, respectively, and in the alternative that if Count I does state a cognizable claim under the Warsaw Convention that the remaining counts should be dismissed because the Convention provides an exclusive remedy. Air India also moves for dismissal on forum non conveniens grounds. Finally, Air India asks the court to strike the Harpalanis' jury demand, pursuant to 28 U.S.C. § 1330. The motion to dismiss will be granted in part and denied in part; the motion to strike the jury demand will be granted.

## I.

### The Warsaw Convention

A. Does Count I state a cause of action under the Warsaw Convention?

The Warsaw Convention applies to all international transportation of persons, baggage, or goods performed by aircraft for hire. Warsaw Convention, done Oct. 12, 1929, art. 1, note following 49 U.S.C. § 1502. For purposes of the Convention, "international transportation" includes any transportation in which both the places of departure and destination are within the territory of signatories to the Convention. *Id.* Both the United States and India are signatories.

Article 19 of the Convention provides:

The carrier shall be liable for damage occasioned by delay in the transportation by air of passengers, baggage, or goods.

*Id.* art. 19. While few reported cases discuss Article 19, those few suggest that Article 19 provides a cause of action in cases such as this one. *See Mahaney v. Air France,* 474 F.Supp. 532 (S.D.N.Y. 1979) (recovery under Article 19 of cost of ground transportation necessitated by "bumping" by airline barred by statute of limitations), *Hill v. United Airlines,* 550 F.Supp. 1048, 1054 (D.Kan.1982).

Air India urges this court to adopt the reasoning of the court in *Brunwasser v. Trans World Airlines, Inc.,* 541 F.Supp. 1338 (W.D.Pa.1982) and rule that the bumping does not fall within the phrase "in the transportation by air." The facts of *Brunwasser* are clearly distinguishable from those of the case at hand, however. In *Brunwasser,* the plaintiff purchased in February of 1981 non-stop round-trip tickets on TWA from Pittsburgh to London in September of that year. When TWA later cancelled the flight, the airlines contacted the plaintiff in June and offered three alternatives to the previously scheduled flight: (1) a non-stop flight on another day, (2) travel on the date originally scheduled but with a stop in New York, or (3) a refund of the purchase price of the tickets. The plaintiff, finding none of the alternatives acceptable, filed suit, claiming that cancellation of the flight violated Article 19 of the Warsaw Convention. The court held that the cancellation did not amount to a delay "in the transportation by air." The

court felt that the phrase should be construed narrowly and adopted the definition found in Article 18 of the Convention, which deals with airline liability for lost or damaged baggage:

> The transportation by air within the meaning of [this article] shall comprise the period during which the baggage or goods are in the charge of the carrier, whether in an airport or board an aircraft ...

Warsaw Convention, art. 18(2). This definition, however, applies only to Article 18 of the Convention; that the drafters did not provide a similar definition for Article 19 is significant. Furthermore, the Harpalanis, unlike the plaintiff in *Brunwasser*, were at the airport and in the charge of the carrier, as Air India controlled whether or not they left that night, at the time of the bumping.

The *Brunwasser* court also applied the three-prong test used by courts to determine whether a sufficient nexus exists between personal injury and air travel to state a claim under Article 17 of the Convention: the location of the accident, the activity in which the injured person was engaged, and the control by the defendant of the injured person at the time of the accident. *Brunwasser*, 541 F.Supp. at 1344. The court found that the test was not met because the acts complained of "occurred long before [the plaintiff] was to engage in any air travel with the defendant," and because by offering the alternatives, TWA never exercised any significant control over the plaintiff's actions. *Id.* at 1345. In the instant case, the Harpalanis were notified of the bumping at the airport just two hours before take-off. Furthermore, because Air India refused to endorse the tickets and did not offer the Harpalanis *any* alternatives, Air India exercised complete control over whether the Harpalanis left India.

Air India also argues that recognizing that the Harpalanis have a cause of action under Article 19 would defeat the purpose of the Convention to limit the liability of international air carriers. That purpose is met by subjecting claims within the Warsaw Convention to a $75,000 ceiling on damages, not by reading out of the Convention those claims that clearly fall within it. Indeed, deciding that this bumping was not actionable under the Convention would permit the Harpalanis to proceed under another theory, such as breach of contract, under which the airline's liability would be unlimited.[1]

Therefore, Count I does state a cause of action under the Warsaw Convention and the motion to dismiss will be denied as to Count I.

## B. Does the Warsaw Convention provide the exclusive remedy?

Air India argues that if Article 19 does state a cause of action, the Warsaw Convention provides an exclusive remedy and therefore all of the remaining counts should be dismissed.

Article 24 of the Convention provides in relevant part:

> In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to the conditions and limits set out in this convention.

The circuit courts of appeal which have discussed Article 24 have different understandings of the article's meaning. The Ninth Circuit, in *In re Mexico City Aircrash of October 31, 1979*, 708 F.2d 400, 414 n. 25 (9th Cir.1983) suggested that alternative legal bases of action remained available but that neither the liability limits of the Convention nor its limitation period may be circumvented by resort to such an

1. Air India argues that a determination that "bumping" claims properly fall within the strictures of Article 19 would open the doors of the federal courts to claimants seeking to litigate simple contract claims against an international air carrier. The floodgates argument has not persuaded courts to deny remedies for personal injuries or loss or damage to baggage under other articles of the Convention. Furthermore, the doors to the federal courts are already open to plaintiffs who claim they were "bumped" in a discriminatory fashion. See Federal Aviation Act § 404(b), 49 U.S.C. § 1374(b).

alternative basis. The Fifth Circuit has squarely held, however, that where the Warsaw Convention provides an independent cause of action, it provides the exclusive remedy thereby preempting other state or federal law claims, *Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc.*, 737 F.2d 456 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985) and both the Second and Third Circuits have indicated that they would follow this approach. See *Benjamins v. British European Airways*, 572 F.2d 913 (2d Cir.1978), *cert. denied,* 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979), *Abramson v. Japan Airlines Co.*, 739 F.2d 130, 134 (3d Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1776, 84 L.Ed.2d 835 (1985). The view that the Warsaw Convention provides an exclusive remedy furthers the dual purposes of the Convention to establish a uniform body of world-wide liability rules to govern international aviation and to limit of liability of international air carriers. *Reed v. Wiser*, 555 F.2d 1079, 1089–90 (2d Cir.), *cert. denied,* 434 U.S. 922, 98 S.Ct. 399, 54 L.Ed.2d 279 (1977).

The Harpalanis argue that their allegations of willful misconduct on the part of Air India, if proven, would permit them to circumvent the exclusivity of the Convention. They rely on Article 25(1) of the Convention which provides:

> The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, if the damage is caused by his wilful misconduct. . . .

Warsaw Convention, art. 25(1).

Air India concedes that if willful misconduct on its part is shown, the $75,000 limitation on liability may be disregarded. The parties have not directed our attention to any cases and our initial research has revealed no cases which suggest that a showing of willful misconduct would permit recovery under alternative legal theories. Rather, we read Article 25 to preclude a defendant whose misconduct was willful from defending on the grounds that it is not liable beyond specified limits or for certain types of injury. For this reasons, the allegations or proof of willful misconduct will not permit the Harpalanis to proceed on alternative theories. The claim under the Warsaw Convention provides the exclusive remedy for delays in the transportation by air. Therefore, Counts II, III and IV will be dismissed without addressing the legal sufficiency of the claim under the federal regulations.

### III.

### Forum Non Conveniens

Air India also seeks to dismiss the complaint on the ground of forum non conveniens, contending that this suit is more properly brought in an Indian forum. The Supreme Court listed factors to be considered in determining whether an action should be dismissed on forum non conveniens grounds in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Unless the balance of factors is in the defendant's favor, however, the plaintiff's choice of forum is not to be disturbed. *Id.* at 508, 67 S.Ct. at 843.

Private interests of the litigants to be considered include relative ease of access to sources of proof, availability of compulsory process for the attendance of unwilling witnesses and the cost of attendance of willing witnesses, and all other practical problems. Air India employees who may testify as to the occurrences in Bombay are located in India. However, the Harpalanis, whose testimony on the events in Bombay and the additional costs and inconvenience they experienced will be crucial, reside in the Chicago area. Nor do the public interests weigh heavily in favor of an Indian forum. The law that will apply, that of the Warsaw Convention, would be the same in either forum. Air India asserts that India has the "greater interest in deciding this controversy arising from the alleged conduct of Air India, a government entity." Mem. in Support of Motion to Dismiss, p. 18. The residents of this community, however, have an equal interest in the alleged mistreatment of the Harpalanis by the air-

line. Because the balance of factors does not strongly favor either forum, the plaintiff's choice of forum will not be disturbed. The motion to dismiss on the ground of forum non conveniens is denied.

### IV.

### Availability of a Jury Trial

■ Air India also seeks to have the Harpalanis' demand for a jury trial struck under 28 U.S.C. § 1330(a). That section provides:

> The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity under either section 1605–1697 of this title or under any applicable international agreement.

28 U.S.C. § 1330(a). Under section 1603 foreign state includes "a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b)." Under that subsection, an agency or instrumentality of a foreign state means any entity:

> (1) which is a separate legal person, corporate or otherwise, and

> (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

> (3) which is neither a citizen of a State ... nor created under the laws of any third country.

28 U.S.C. § 1603(b). Air India is wholly owned by the government of India and therefore qualifies as a foreign state under section 1603.

Although section 1330 does not, on its face, preclude trial by jury in actions against foreign states, courts of appeals faced with the issue have uniformly so held. *Arango v. Guzman Travel Advisors,* 761 F.2d 1527 (11th Cir.1985), *Goar v. Compania Peruana de Vapores,* 688 F.2d 417 (5th Cir.1982), *Ruggiero v. Compania Peruana de Vapores,* 639 F.2d 872 (2d Cir.1981), *Rex v. Compania Peruana de Vapores,* 660 F.2d 61 (3d Cir.1981), *cert. denied,* 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 441 (1982), *Williams v. Shipping Corp. of India,* 653 F.2d 875 (4th Cir.1981), *cert. denied,* 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982).

The legislative history of the section also indicates that jury trials are not available under section 1330(a). H.Rep. No. 1487, 94th Cong., 2d Sess. 13 *reprinted in* 1976 U.S.Code Cong. & Ad.News 6604, 6611–12; S.Rep. No. 1310, 94th Cong., 2d Sess. 12.

The Harpalanis argue that "a separate legal person, corporate or otherwise," whose controlling shares are owned by a foreign state is not precluded from being a citizen or subject of a foreign state for purposes of the diversity statute, 28 U.S.C. § 1332(a)(2), and therefore that jurisdiction is also proper under that section, which imposes no restriction on jury trials. Such an interpretation would permit plaintiffs to sue state-owned corporations under section 1330(a), with a bar to a jury demand by either side, or elect to sue under section 1332(a)(2) and have a jury in any case ordinarily triable to a jury. This court agrees with other courts which have addressed this argument that no such option exists. "The same entity cannot be both a foreign state and a citizen or a subject of a foreign state.... The conclusion is inescapable from the language of the statute that Congress meant section 1330 to be the exclusive means whereby a plaintiff may sue any foreign state as defined in section 1603(a)." *Ruggiero,* 639 F.2d at 875.

The Harpalanis also argue that the definition of "foreign state" in section 1603 applies only to chapter 97, not to chapter 85 where section 1330 is located. Although section 1603 begins with the phrase "[f]or the purposes of this chapter," the argument must fail as section 1330 specifically refers to the definition in section 1603.

The Harpalanis advance the argument that jurisdiction exists under 28 U.S.C. § 1331, the federal question statute, and

that they are entitled to a jury trial through that section. The result would be that a plaintiff suing a foreign state on a federal question could have a jury trial while a person suing a foreign state on a nonfederal question could not. In the words of the Second Circuit:

> The courts must learn to accept that, in place of the familiar dichotomy of federal question and diversity jurisdiction, the Immunities Act has created a tripartite division—federal question cases, diversity cases and actions against foreign states. If a case falls within the third division, there is to be no jury trial even if it might also come within the other two.

*Ruggiero,* 639 F.2d at 876.

Finally, the Harpalanis argue that striking their jury demand would violate their Seventh Amendment right to a jury trial. The Second Third, Fourth, Fifth, and Eleventh Circuits have disposed of this argument by noting that the Seventh Amendment only *preserves* a right to trial where one existed at common law; it does not *create* a right to trial by jury. Since no right to a jury trial existed in 1791 with respect to a suit against a foreign government or an instrumentality thereof, no right to a trial by jury exists here. *Arango,* 761 F.2d 1534–35, *Goar,* 688 F.2d at 423–28, *Ruggiero,* 639 F.2d at 878–81, *Rex,* 660 F.2d at 65–69, *Williams,* 653 F.2d at 881–83.

The Harpalanis also rely on *Pernell v. Southall Realty,* 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974) and *Curtis v. Loether,* 415 U.S. 189, 94 S.Ct. 1005, 39 L.Ed.2d 260 (1974) to support their argument that a jury trial must be available because this action involves remedies traditionally enforced at law. It is not enough, however, that the nature of the complaint is legal; the action must also be brought against a defendant who was suable at common law in 1791. *Williams,* 653 F.2d at 883.

## CONCLUSION

The Harpalanis have stated a cause of action under Article 19 of the Warsaw Con-

vention for "delay in the transportation by air." Because the remedy under the Convention is exclusive, the remaining counts of the complaint are dismissed. The motion to dismiss on the ground of forum non conveniens is denied. The jury demand is struck pursuant to 28 U.S.C. § 1330(a).